HEANEY, Circuit Judge,
dissenting.
I respectfully dissent. Russell was unlawfully detained due to administrative error. The majority asserts that Russell cannot prevail on his claim that Hennepin County (“the County”) deprived him of a constitutionally protected right because he “failed to present material evidence upon which a reasonable jury could find that ADC policy caused his prolonged detention.” Ante at 848, 849. I disagree. Russell was held in jail for six days after Judge Hartigan ordered him released, in spite of Russell’s daily, repeated requests that the County investigate his unjustified detention, nothing changed; each day Russell complained about being held, yet each day he remained unjustifiedly incarcerated. Any policy that leads to or permits that result gives rise to an inference that there has been an unconstitutional deprivation of one’s liberty. Accord Ricketts v. City of Columbia, 36 F.3d 775, 779-80 (8th Cir.1994) (noting that in § 1983 actions a jury must decide whether there is a causal link between the municipal policy and the constitutional violation).
The majority would parse Russell’s claim into discrete questions about whether the ADC policy violated conditional-release inmates’ constitutional rights, and whether the ADC staff customarily disregarded ADC release procedures with respect to such inmates’ constitutional rights. To compartmentalize Russell’s argument in this fashion misses the point because Russell was not a conditional-release inmate. The ADC has a detailed written policy with respect to the processing of inmates subject to a conditional release. However, it has no policy for investigating possible administrative errors related to an inmate’s release. Under these circumstances, the question is not whether a policy — established in writing or through custom — is followed, but whether the failure to have any policy with respect to the matter evidences deliberate indifference to the rights of an inmate. I believe it does.
Judge Hartigan’s order required that Charles Russell be released promptly. It stated:
I don’t want you to have any contact with [the victim] because I don’t want to throw you in jail, which is what I will have to do. We are going to order a presentence investigation and you are going to cooperate with that.... You will be out. You go over to Probation and talk to them and go over everything and then five or six weeks from now we will be able to give you a stay of imposition just like [the defendant’s attorney] wants for you and negotiated for you.... And so that’s what I want to do. I don’t want to have to put you in jail.
(T. of Felony Plea and Factual Basis, State v. Russell, Dist. Ct. Minn. No. 00062767 at 5-6 (emphasis added)).
The court deputy erred in reporting to the ADC that Russell’s release was to be *851 conditioned on his first meeting with probation. On November 9, 2000, Russell called the error to the attention of ADC staff within two hours of being confined. The staff made no attempt to contact the court to determine whether Russell should be immediately released or held until after he met with a probation officer. Instead, ADC staff told Russell to fill out a “green slip” (an Inmate Request Form) stating his complaint. Russell did as directed and completed a green slip on November 10. He wrote, “I was released from custody yesterday, and I’m still confined. Could you find out what is the procedure, why I’m still languishing here[?]” The ADC took no action. On November 11, Russell submitted another slip: “I hereby seek information about my release from custody. My case was resolved at about 4 p.m. on Thursday and I’m still confined without any explanation or information. What’s the procrastination about?” Still no action was taken by the ADC. Russell testified that he filed similar complaints on each of the days that he was unlawfully incarcerated. The ADC never contacted either the court or the probation office to determine the validity of Russell’s complaint; they simply held him in the ADC.
The majority would excuse the ADC’s failure to act because November 10 was a holiday, followed by the weekend, resulting in three consecutive days that the courthouse was closed. I find it hard to believe that in Minnesota’s most populous county, when a serious question arises as to the unjustified detention of an inmate, there is no procedure to contact court personnel over a weekend. Assuming, though, that the majority is correct in concluding that the court was inaccessible for three days, there is still no excuse for the ADC’s failure to investigate Russell’s claim on Monday or Tuesday. The ADC never inquired about Russell’s status, choosing instead to accept the court deputy’s erroneous report of Judge Hartigan’s order. Russell was released six days later only because his lawyer, not the ADC, contacted the court.
In the recent case of Hayes v. Faulkner County, 388 F.3d 669 (8th Cir.2004), our court was faced with a similar circumstance. In Hayes, the plaintiff was held in jail for a prolonged period before going to court. He notified the proper authorities of the extended detention, to which the jail administrator responded that it was not his responsibility to investigate. Plaintiff Hayes sued the county, alleging that its policy of delegating responsibility for setting court dates to the court administrator was deliberately indifferent to the constitutional rights of arrestees. Our court agreed, holding that a policy that “attempts to delegate the responsibility of bringing detainees to court for a first appearance and ignores the jail’s authority for long-term confinement ... is deliberately indifferent to detainees’ due process rights.” Id. at 674.
Russell’s situation is akin to Hayes. He filed several notices to the ADC staff, informing them that the court had ordered his release. Instead of investigating his claim, the ADC staff ignored it and directed Russell to the probation department. Hayes, however, forbids such a delegation; it is the ADC’s responsibility to institute policies and customs that ensure detainees are not held longer than necessary and then to follow such policies. I would remand to the district court with directions to permit Russell to proceed to trial to determine whether the time he was detained was of sufficient constitutional significance to justify an award of damages, and, if so, the amount of those damages.